UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MARGARET CHAMPION,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:24-cv-00628-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF**<br><br>**(Doc 12, 16)** |

**I.     Introduction**

Plaintiff Jennifer Margaret Champion appeals the decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

**II.     Factual and Procedural Background**

On June 23, 2017, Plaintiff applied for SSI alleged disability beginning January 2010 due to back pain, endometriosis, gastrointestinal problems, anxiety, and depression, among other impairments. AR 160–61, 176, 506–11. The agency denied the application initially on November 8, 2017, and on reconsideration on February 26, 2018. AR 161–74; 176–90. The ALJ held hearings on November 26, 2019 and March 4, 2020. AR 89–159. ALJ Nancy Stewart issued an unfavorable decision on May 1, 2020. AR 191–207. On October 20, 2020, the Appeals Council granted review and remanded the matter to the ALJ for further proceedings. AR 208–213.

On remand, the ALJ held another hearing on March 10, 2021. AR 89–122. On May 27, 2021, ALJ Nancy Stewart issued a second unfavorable decision. AR 214–51. On June 6, 2022, the Appeals Council again granted review and remanded the case to a new ALJ.[2] AR 252–255. On remand, ALJ Scott Septer held a hearing on April 20, 2023. AR 47–88. On September 13,

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. Docs. 7, 9.
[2] Neither party discusses either of the Appeals Council's remand orders, the ALJs' compliance therewith, or the first two unfavorable decisions. Rather, the parties discuss the operative (third) ALJ decision independently.

1

2023, ALJ Septer issued the decision at issue denying Plaintiff's claim. AR 18–46. The Appeals Council did not grant review a third time. Rather, on April 8, 2024, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. AR 1–7. This appeal followed.

### III. The Disability Standard

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits. Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is that which could lead reasonable minds to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is

or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of June 23, 2017. AR 24. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, obesity, endometriosis, depression, and anxiety. AR 24. The ALJ also found at step two that Plaintiff's gastrointestinal impairment was not severe. *Id.*

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24–26.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> the claimant is occasionally able to climb ramps, stairs, ladders, ropes, and scaffolds. She is occasionally able to balance, crawl, crouch, kneel, and stoop. The claimant is frequently able to operate foot controls bilaterally, and she should not work in environments subjecting her to unprotected heights or machinery with dangerous, moving mechanical parts. The claimant will be able to sit for an hour at a time, stand for an hour at a time, and will require the ability to adjust from a standing to sitting position (or vice versa) on an hourly basis, while remaining on task, and is able to

perform jobs of a noncomplex nature requiring the performance of no more than simple, routine tasks.

AR 26–35.

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a certified nurse assistant due to the medium-heavy exertional capacity required.  AR 35.  At step five, in reliance on the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: parking lot attendant, bench assembler, and hand packager.  AR 36.  Accordingly, the ALJ concluded that Plaintiff was not disabled since the application date of June 23, 2017.  AR 37.

## V. Issues Presented

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions of five treating sources: Drs. Gibson, Nomicos, Soozani, Winegarden, and MPT Alfaro.

### A. Treating Source Opinions

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other

evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*  "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

## 2. **Analysis**

By way of background, Plaintiff injured her back in 2010 helping to move a patient while working as an in-home certified nurse assistant (CNA). AR 55, 701–02. She underwent L5-S1 fusion surgery in October 2010. AR 1314. She suffered residual pain thereafter, and subsequent MRI imaging in January 2021 showed L4-5 moderate ligamentum flavum and facet hypertrophy, ligamentous thickening up to 5mm, broad based central disc protrusion measuring 3mm, small posterior annular tear, and minor impingement of the bilateral transversing L5 nerve roots. AR 1628. The MRI also showed moderate narrowing of the nerve root sleeve of traversing left S1 and S2 nerve roots. AR 1628. EMG testing from March of 2021 was normal. AR 1670–73.

### a. **Dr. Gibson**

Dr. Gibson opined Plaintiff cannot lift more than 10 pounds and cannot bend or twist more than two times per hour. The ALJ addressed the opinion as follows:

> I find the opinion of medical provider Valerie Gibson, D.O., of limited persuasiveness. Dr. Gibson found that the claimant can lift no more than 10 pounds at a time and should not bend or twist more than 2 times per hour (e.g., 20F/3, 9, 23). Such findings are supported by Dr. Gibson's treatment notes detailing such issues as restricted lumbar flexion to 40 degrees and reduced strength of the left leg compared to the right (see 20F/5; 25F/2). Still, this opinion is not consistent with the record as a whole, including the more persuasive opinion from Dr. Wagner detailed above (19F), the prior administrative medical findings of Drs. Santiago and Bullard (2A; 4A); and the medical evidence from other providers showing evidence normal range lumbar spine motion, unremarkable ambulation without discomfort, intact strength without any reduction in leg strength, and no focal deficits (see 19F; 30F/7; 31F/1-4), which has been considered in finding that the claimant is capable of a light range of work.

As to the ALJ's finding that Dr. Gibson's opinion was inconsistent with that of Drs. Wagner, (the consultative examiner), Santiago and Bullard (the two non-examining consultants), Plaintiff relies on district court case authority stating that "the regulations require the ALJ to assess consistency in light of information *other than* that which is contained in the opposing medical opinion." MSJ at 9 (quoting *Katherine T. v. Kijakazi*, No. 22CV396, 2022 WL 17540791, at *5

(S.D. Cal. Dec. 8, 2022) (emphasis in original). The applicable regulation on this point states that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the *evidence from other medical sources* and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2)" (emphasis added). Plaintiff emphasizes that Dr. Gibson's opinion was consistent with the other treating source opinions, as will be discussed more below, at least as to the all-important 10-pound weight limitation. Plaintiff asserts, on balance, that Dr. Gibson's opinion was not inconsistent with the weight of the medical opinion evidence. Importantly though, Plaintiff's point here does not undermine the ALJ's ultimate decision.

The ALJ further explained that the opinion was inconsistent with "the medical evidence from other providers showing evidence [of] normal range lumbar spine motion, unremarkable ambulation without discomfort, intact strength without any reduction in leg strength, and no focal deficits" (see 19F; 30F/7; 31F/1-4). Plaintiff contends, contrary to the ALJ's assertion, that "Dr. Gibson's opinion was consistent with the overwhelming amount of objective medical evidence in the record," evidence which Plaintiff contends the ALJ ignored, including:

> diagnostic imaging that showed a broad-based central disc protrusion at L4-L5 that impinged on her traversing L5 nerve roots and a moderate narrowing of the nerve root sleeve of the traversing left S1 and S2 nerve roots (Tr. 1628). Likewise, Dr. Gibson's opinion was consistent with Plaintiff's abnormal examinations with other providers, which showed she had lumbar tenderness; positive straight leg rase testing on her left; positive lumbar facet loading; tenderness to palpation in lumbar spine; weakness and decreased sensation in left lower extremity; decreased strength in lower extremities; positive straight leg raising test bilaterally; and decreased range of motion in her lumbar spine (Tr. 1102, 1104, 1105, 1106, 1108, 1128, 1130, 1138, 1140, 1222, 1277, 1717, 1843). MSJ at 8.

Plaintiff then repeats this argument in defense of the other treating source opinions contending that the ALJ ignored supportive clinical findings. To begin, as quoted above, the ALJ did not ignore positive clinical findings even in the paragraph devoted to Dr. Gibson's opinion. Rather, the ALJ acknowledged left leg strength deficits and lumbar ROM deficits and separately

noted countervailing findings on both subjects.

Further, the ALJ's one-paragraph discussion of Dr. Gibson's opinion was only a minor piece of the ALJ's 9-page singled spaced RFC analysis in which the ALJ separately covered the objective medical evidence in detail, including the restrictions it does, and does not, support. AR 26–34.

Contrary to Plaintiff's assertion, the ALJ did not ignore the MRI findings, but discussed them in detail. Importantly, the findings do not describe severe abnormalities. Plaintiff emphasizes the "broad-based central disc protrusion at L4-L5 that impinged on her traversing L5 nerve roots," but omits some key descriptors used by the radiologist, namely that it was a 3mm disc protrusion causing "minor" impingement of the transversing L5 nerve roots. AR 1628. Minor nerve root impingement is not consistent with the alleged inability to lift more than 10 pounds, or perform postural maneuvers twice per hour, as opined by Dr. Gibson. The same is true of the remaining MRI findings which the radiologist described as mild to moderate in nature as quoted above. *Id.*

As for the physical examination abnormalities, Plaintiff emphasizes the following findings which he contends support Dr. Gibson's opinion and which the ALJ allegedly overlooked: lumbar tenderness; positive straight leg rase testing on her left; positive lumbar facet loading; tenderness to palpation in lumbar spine (which is duplicative of the first point); weakness and decreased sensation in left lower extremity; decreased strength in lower extremities (which is duplicative of the previous point); positive straight leg raising test bilaterally; and decreased range of motion in her lumbar spine. MSJ at 8 (citing AR 1102, 1104, 1105, 1106, 1108, 1128, 1130, 1138, 1140, 1222, 1277, 1717, 1843).

Contrary to Plaintiff's contention, the ALJ acknowledged not only the positive findings in each respect, but also negative findings or quasi-positive findings on most if not all the same

subjects.[3]  First, with respect to lumbar tenderness, the ALJ noted September 2021 and June 2022 findings of "<u>mild</u>" tenderness and tightness of the lumbar spine (AR 29, citing 31F/1-4).  Mild lumbar tenderness is not strongly supportive of the disabling limitations to which Dr. Gibson opined.

With regard to straight leg raise, the ALJ noted: 1- <u>positive</u> straight leg raise in December 2017 (AR 28, citing Ex. 16f/1), 2- "<u>somewhat positive</u>" straight leg raise to 60 degrees in January 2020 (AR 29, citing Ex. 16F), 3- <u>positive</u> straight leg raise in January of 2021 (AR 29, citing Ex. 25F/2), and 4- <u>negative</u> straight leg raise in March 2021 (AR 29, citing Ex. 30F/7).  These mixed findings are not fully consistent with Dr. Gibson's opinion concerning disabling limitations, including inability to lift more than 10 pounds.

With respect to lower extremity strength and sensation, the ALJ noted: 1- <u>5/5 lower extremity strength</u> with <u>intact sensation</u> in June 2019, August 2019, December 2019, June 2020, and March 2021 (AR 28–29, citing Ex. 20F/ 5, 15, 18; 25F/18; 32F/1), and 2- <u>4/5 strength</u> in the left leg and <u>5/5 in the right leg</u> in January 2021 (AR 25F/2).  This reflects that there was more evidence of full lower extremity strength with intact sensation than there was evidence of reduced strength or reduced sensation.  This evidence again was not significantly corroborative of Dr. Gibson's opined limitations.

With regard to lumbar spine range of motion, the ALJ noted: 1- reduced ROM to <u>60 degrees</u>[4] in flexion in June 2019 (AR 28, citing Ex. 20F/18); 2- lumbar flexion to 80 degrees in August 2019 (AR 28, citing Ex. 20F/15); 3- lumbar flexion limited to 40 degrees in December 2019 (AR 28, citing Ex. 20F/5); 4- good lumbar spine ROM in January 2020 including 90 degrees of flexion and

---

[3] The ALJ covered these findings largely prior to the analysis of the opinion evidence, and proceeded examination by examination, listing all findings identified therein, whereas Plaintiff addresses them finding by finding (tenderness, straight leg raise).

[4] Approximately 75 degrees is considered normal.  https://web.mit.edu/tkd/stretch/stretching_8.html

25 degrees of extension (AR 29, citing Ex. 19F); 5- flexion to 60 degrees in June of 2020 and January 2021 (AR 29, citing Ex. 25F/2, 18); 6- flexion to 45 degrees in August 2021 (AR 29, citing Ex. 33F/5); 7- normal lumbar flexion of 90 degrees in September 2021 and June 2022 (AR 29, citing Ex. 31F/4).  Again, the ALJ covered these mixed findings in detail, and they are not significantly corroborative of Dr. Gibson's opined limitations.

In sum, this is not a case where the ALJ merely offered a factual recitation of the objective evidence followed by a conclusion.  Rather, at the end of the physical RFC discussion, the ALJ bridged the analytical gap by explaining what the evidence showed on balance and highlighted the evidence that was integral to the RFC:

> Thus, in considering the record, including the imaging of the lumbar spine, the history of lumbar fusion surgery, the course of treatment for pain, and medical evidence revealing such issues as restricted lumbar spine motion, slowed gait, and positive straight leg raise testing on the left at times, I have provided work restrictions. Still, in considering the record as a whole, including the denial of side effects, the reports of good benefit from treatments, the claimant's activities of daily living (including driving, cooking, cleaning her home, and doing yoga, and caring for her children), and the medical records showing lumbar spine flexion often in the range of 60 degrees to full, ambulation without discomfort, intact strength, no focal deficits, and the ability to sit without overt signs of pain for a 4+ hour evaluation with the need for just one bathroom break, I have found that the claimant is capable of work within the above residual functional capacity.  AR 29–30.

Thus, Plaintiff has not made a sufficient showing that the ALJ committed  error in the analysis of Dr. Gibson's opinion.

### b.    Dr. Nomicos

Dr. Nomicos opined that Plaintiff was limited to lifting, pushing and pulling 10 pounds with limited bending and stooping.  AR 1650, 1652, 1659.  The ALJ found the opinion unpersuasive because it was not supported by, or consistent with, the objective medical evidence.  AR 34.  For the same reasons discussed above, the mild to moderate findings on imaging and mixed findings on clinical exam do not support the extreme limitation to 10 pounds of weightlifting.

Plaintiff disputes the ALJ's reasoning because the ALJ cited to only one of Dr. Nomicos'

examinations but disregarded the other examinations from Dr. Nomicos which showed Plaintiff had reduced flexion and extension in her lumbar spine; tenderness and tightness in her lumbar spine; limited right bend; limited left bend; limited right twist; limited left twist; and a slow and stiff gait (Tr. 1652, 1659)." MSJ at 11.

Plaintiff's discussion breaks little new ground not covered above in regard to Dr. Gibson's opinion. The only novel findings were slow and stiff gait, limited side bending and twisting bilaterally. *Id.* However, the slow and stiff gait was noted as "mildly" slow and stiff (AR 1659), and the other two exams had no commentary about gait dysfunction. Further, Dr. Nomicos identified no standing or walking restrictions whereas the ALJ did in fact include such restrictions, namely standing no more than one hour at a time and the ability to shift from sitting to standing and vice versa on an hourly basis. AR 26.

With respect to the bilateral side bending and twisting deficiencies, Dr. Nomicos ultimately opined to non-specific "limited bending and stooping." Social Security Ruling 83-14 does not consider them to be separate movements but considers "bending" to be a broader term and explains that there are two types of bending: stooping and crouching. The ALJ assessed an RFC for occasional stooping and crouching, thus covering both types of movements specified by Dr. Nomicos, whose non-specific use of "limited" does not suggest those movements were restricted more than the ALJ's RFC for "occasional."

### c.    Dr. Soozani

Dr. Soozani examined Plaintiff in March 2016 and opined that Plaintiff could: lift/carry and push/pull 10 pounds; must avoid prolonged sitting, standing, and walking; can occasionally bend and twist; and cannot squat, crouch, or crawl. AR 726. Dr. Soozani examined Plaintiff again in August 2021 and similarly opined with an additional restriction of occasional stair climbing. AR 1681. The ALJ found the opinion was supported by Dr. Soozani's two examinations, but

11

inconsistent with the other objective evidence in the record for the same reasons discussed above in relation to Dr. Gibson's opinion.

The 10-pound weight restriction is not justified for the same reasons already discussed. As for the postural restrictions, the ALJ's assessed RFC already limited bending to occasional. As for the restriction to occasional twisting, the prohibition on any squatting, crouching, or crawling, and the need to avoid prolonged sitting, standing, or walking, neither Dr. Gibson nor Dr. Nomicos identified such restrictions. Dr. Nomicos did comment specifically on postural activities. His expression of some postural restrictions suggests the exclusion of the others. Adopting Dr. Soozani's opinion concerning Plaintiff's postural capabilities would amount to a rejection of Dr. Nomicos's opinion concerning Plaintiff's postural capabilities. Plaintiff's argument is thus unpersuasive insofar as it seeks to have the ALJ adopt the most restrictive aspects of each opinion, including restrictions that not all treating sources agreed upon.

With respect to sitting, standing, and walking, the ALJ's assessed RFC provides for a maximum of one hour of consecutive sitting, or standing, with the ability to alternate between each. Plaintiff does not substantiate that a more restrictive RFC is justified by the record, or that the RFC as formulated is necessarily inconsistent with Dr. Soozani's general prohibition on prolonged activities.

### d. Dr. Winegarden

Dr. Winegarden, Plaintiff's psychologist, opined that Plaintiff had marked limitations in her ability to sit, bend, carry, lift, walk, or use her extremities, and that her mental impairments impacted her ability to participate in daily activities and impacted her ability to work on a sustained basis. AR 1846. The ALJ found the opinion unpersuasive because it pertained to Plaintiff's physical dysfunction which was outside the expertise of Dr. Winegarden. AR 34. Plaintiff explains, contrary to the ALJ's findings, that Dr. Winegarden specifically opined that Plaintiff's

"mental impairments impact her ability to participate in daily activities and work on a sustained basis." AR 1846. Dr. Winegarden's expertise aside, the opinion does not explain how work activities are impacted and to what extent. Plaintiff reads the opinion as stating Plaintiff is unable to sustain any physical work activities to any extent. If that was Dr. Winegarden's intent, then the opinion goes well beyond that of Drs. Gibson, Nomicos, and Soozani, and does so without any articulated basis.

Plaintiff contends the ALJ's error was harmful because Dr. Winegarden's opinion was not incorporated in the RFC, however Plaintiff offers no explanation as to how it could be incorporated. Importantly, Dr. Winegarden did not address Plaintiff's ability to meet the mental demands of work, such as the ability to understand, carry out, and remember instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *See* SSR 85-15. In the end, the conclusory prohibition on work activity does not address mental functionality with any level of particularity that could be incorporated into the RFC, or otherwise aid in the disability analysis.

### e.  **MPT Alfaro**

In the visit notes for a physical therapy session dated April 4, 2023, MPT Alfaro wrote under "Assessment/Diagnosis" that "Due to pain, she is functionally limited in bending, lifting, walking and prolonged activities . . ." (AR 1843). Plaintiff contends the ALJ erred in failing to address the opinion as required by the regulations, specifically how the factors of supportability and consistency affect the persuasiveness of the opinion.

Under the regulations, a "medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in specific physical or mental demands of work activities. 20 C.F.R. § 416.913(a)(2)

Treating providers often make comments about functionality in visit notes alongside the exam findings, diagnoses, and treatment plan, as MPT Alfaro did here.  Every treatment note commenting on functionality within a 2,000 page medical record does not necessarily amount to a medical opinion requiring the ALJ to provide a distinct paragraph addressing the required regulatory considerations of supportability and consistency as to each note.  Otherwise, the ALJ decision could possibly be several hundred paragraphs in length.

Additionally, MPT Alfaro's comment is vague and conclusory.  Plaintiff explains that "While Mr. Alfaro did not explicitly define what 'prolonged activities' entailed, agency policy indicates that 'prolonged' equated with an activity that is performed a majority of the workday. See SSR 83-12 (referring to sedentary work as involving 'prolonged sitting' and light work as involving 'prolonged standing or walking'); SSR 83-10 (sedentary work involves sitting 6 hours in an 8-hour workday, and light work involves standing/walking 6 hours in an 8-hour workday); *see also Booth v. Barnhart,* 181 F.Supp.2d 1099, 1107-08 (C.D. Cal. 2002) ('It is logical to assume that Dr. Robert's reference to 'prolonged' sitting means sitting at least half of the work day')." But what MPT Alfaro meant by "prolonged" is not the only vague portion of the statement in question, which reads "Due to pain, she is <u>functionally limited in bending, lifting, walking</u> and prolonged activities . . ." (AR 1843) (emphasis added).  Again, MPT Alfaro does not explain how "functionally limited" Plaintiff is.  Plaintiff reads the statement as expressing that Plaintiff simply cannot perform any work activities for the majority of a workday.  If that was the intent behind MPT Alfaro's treatment note, then it went much further than the opinions of Drs. Gibson, Nomicos, and Soozani, and did so without explanation or basis. Thus, it required no commentary by the ALJ.

**VI.     Conclusion**

Here, the ALJ found Plaintiff had the RFC for a reduced range of light work with the ability

14

to frequently lift 10 pounds and occasionally 20, the need to alternate between sitting and standing hourly, and the ability to perform postural movements at most occasionally.  This RFC was not drastically different from the functional opinions of Drs. Gibson, Nomicos, and Soozani, the only opinions that offered any specificity about Plaintiff's ability to perform work activities.  These three doctors agreed only with respect to a 10-pound weight restriction, but otherwise provided varying views on Plaintiff's ability to sit, stand, walk, and perform postural movements.  The 10-pound weight restriction was not warranted here as the MRI findings described mild to moderate abnormalities and the physical examination findings were mixed.

With respect to sitting, standing, and walking, only the ALJ found Plaintiff had specific restrictions, whereas Drs. Gibson and Nomicos did not opine Plaintiff had any such restrictions, and Dr. Soozani opined only generally that Plaintiff could not engage in prolonged activities. Finally, as to postural movements, the ALJ's RFC was less restrictive than the three doctors in some respects, just as restrictive in some respects, and even more restrictive in some respects.

In sum, Plaintiff's argument is unpersuasive insofar as it suggests the ALJ should have adopted the most restrictive aspects of the three physicians' opinions, including restrictions they did not all identify.

**VII.   Order**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 12) is **DENIED**.

2. Defendant's cross motion (Doc. 16) is **GRANTED.**

3. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:  **December 18, 2024**                              **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE